314-069-2, people of the State of Illinois, added by non-Dodd-Papers, Eddington v. Patton, held by the non-convicts. May it please the Court, Counsel? My name is Sean Conley. I'm with the Office of the State Appellate Defender, and I represent Mr. Eddie Patton. Mr. Patton pleaded guilty in a negotiated plea to two counts of aggravated battery. One was a Class X and one was a Class III, and he is currently serving two 15-year terms. We've raised three issues on appeal. I plan to spend the bulk of my time on Issue 1 and speak of the others towards the end if we have time. But obviously, if you have questions about the other issues, I'm happy to do my best to answer them. Issue 1 challenges the validity of the plea, and it arises from what I consider an extremely unique and disturbing set of circumstances. And I'd urge Your Honors to spend a considerable amount of time with the record in this case, because I've been doing this for a relatively short period of time. I have never seen anything like this in any of the circumstances. Thankfully, these circumstances are uncommon, but as a consequence of them being uncommon, the legal basis for the claim can be a little confusing. And that confusion shows up in the briefs in the case where the State wants to make this a claim of ineffective assistance of Clean Counsel. I'm here to stress that this is not that claim. This is not an ineffective assistance claim. Those claims typically arise from some sort of affirmative misstatement of law or fact. What happened here is somewhat different than that. Instead, what we have here is a more basic question of whether the facts in the case show a knowing, voluntary plea. Actually, there's two basic parts to the argument. The first are the circumstances in which the plea were taken, and we believe that those circumstances were coercive to an extreme. The examples of plea counsel's unprofessional conduct on the record are numerous. It permeates the portion of the record that this particular attorney was involved in. For example, prior to the plea, plea counsel repeatedly no-showed or showed up very late when he gave excuses, which he did not do very often. The excuses were incredible. He failed to keep the courts and the prosecution updated on his contact information. He failed to conduct very basic tasks related to discovery, which eventually resulted in the State asking to bar the defense that he had given notice on. That defense itself was somewhat odd. While the notice was merely the title of an online medical journal that contained thousands of articles with no indication of what the point of that citation was, and I believe there's evidence on the record that he ultimately failed to fully investigate the case, particularly when there was a witness that he strenuously argued that he wanted to interview, and it appears that he never interviewed that witness. In terms of the plea itself, the hearing I think is best described as chaotic, and it was characterized by an extended outburst. Plea counsel asked for a continuance in order to go home from, this is happening in Peoria, to go home to Chicago to deal with what he characterized as a family emergency. We know that there was no emergency. Still, plea counsel cursed, he hurled allegations at the prosecutor. He literally and repeatedly begged to go home. When that was denied, he was eventually threatened by the judge to remain in the courtroom, and I think it's a fair inference to say that that threat is what kept him in the courtroom. And it shouldn't escape this court's notice either that ultimately plea counsel got what he wanted. At that point, there was no trial, and he got to go home substantially sooner than he would have otherwise. That's the context in which the plea was taken. Now, the second part of the argument has to do with the judge's reaction to all of this behavior. The judge repeatedly aligned himself with Mr. Patton. He bickered with plea counsel. He threatened plea counsel with contempt. He eventually held him in contempt, though that did happen after the plea. He offered to help Mr. Patton's family get their money back. He told plea counsel in front of Patton that plea counsel's word as an attorney was not worth anything in that courtroom. He told Patton that he thought Patton was not being represented properly. We believe that the record shows that the judge knew that Mr. Patton was not planning on sitting on his plea, and yet he took the plea anyway and without any caveat or conditional language, told Mr. Patton that he would be able to appeal the plea after the sentencing hearing. And I think we have to be careful about parsing that word appeal here because, of course, Mr. Patton is not an attorney. A reasonable, rational lay person in this situation, after seeing all of that, after witnessing everything he witnessed, after being told by the judge that his attorney wasn't representing him properly, after being told or after the attorney was told in front of that person that the attorney's word was worthless, after witnessing the threats, after making it clear that the intention was to appeal the plea, after seeing all of that, a reasonable, rational person in that situation would have believed that the judge had essentially committed to eventually vacating the plea. Now, the state and the trial court repeatedly suggested that Patton acquiesced to all of this by objecting to the continuance that day and to not firing plea counsel prior to the plea. And I'd just like to point out that this is a distortion of the record. Patton did not object to the continuance. He was never asked to approve the continuance. It would be odd, I think, in most situations to rely on a defendant objecting to a continuance. Instead, he was asked if he had anything to say about the situation. In response, he expressed a preference for going to trial, but he said that he had already talked to plea counsel. Plea counsel was saying there was an emergency, he had to go, and I quote, I don't know, you know. If anything, that's acquiescing to the continuance. It's certainly not an objection. And it's the last time anyone talked to Mr. Patton before the plea was announced. In terms of not firing plea counsel, Mr. Patton and his family had concerns about money that ultimately proved prescient, but even without the knowledge that we have now that plea counsel was having certain professional and financial difficulties, an order from this judge forcing plea counsel to refund Patton's money is not going to guarantee that Mr. Patton can immediately retain other counsel. But more importantly, in the midst of all of this behavior, plea counsel came into court with a comprehensive plan to avoid the majority or at least the most dramatic aspects of his misbehavior. And the idea that Patton was reassured by that response and believed that plea counsel would be held accountable moving forward, I think is eminently reasonable considering that the judge himself was also reassured and promised to hold plea counsel accountable moving forward. So putting the situation on Mr. Patton's shoulders, I believe simply ignores what actually happened in the case. So to sort of sum up the argument here, plea counsel's intensely unprofessional behavior, including but not limited to the date of the plea itself, created a coercive environment that led Mr. Patton to believe that his only chance to get a fair trial was to plead now and later withdraw the plea. Furthermore, the judge's reaction to the situation would lead a reasonable layperson to believe that the plea would eventually be vacated. So this is a situation in which both counsel and the court were culpable in misleading Patton into believing that this was a valid strategy. Your position is the defendant pretended to plead guilty knowing that he was going to withdraw later. Would that premeditated intent? I wouldn't characterize it as pretending, but I think that it's clear that he knew that he did not want to stay with the plea. I think that he made that clear to the court at the time of the plea. Remember that the first thing that happened after the plea was announced, as admonishments were happening, the judge asked Patton, has counsel answered all of your questions? Patton's response was, yes, and by the way, he says I've got 30 days to appeal this. Is that right? Well, yes, you can appeal it. You'll have the right to appeal it after the sentencing here. That's the answer. A few months later, as we're moving into the post-plea proceedings and around the time of the sentencing, the judge on the record clearly indicates his understanding that Mr. Patton was concerned about the level of representation that he was getting at the plea and prior to the plea. He knew the basis on which Patton would eventually ask to withdraw his plea. I think when you look at the situation as a whole, this is not a matter of Mr. Patton trying to game the system. What were the specific words used by the judge to confirm your conjecture or speculation that the judge knew it was going to be a drama? So, again, Mr. That's your statement, right? Right. That the judge well knew. I believe the judge knew. I believe that it's clear in the context. The actual words are, in response to the question, in the midst of the admonishments. I'll be able to appeal this. The answer was, well, you'll have the right to appeal after the sentencing hearing. And that told you that the judge knew he was going to withdraw? I believe, again, I believe in the context of what happened, which is as the plea is being taken, Mr. Patton is saying, I want to appeal this before it's even been accepted. To then say, yes, you'll get to appeal this. To me, the fair and obvious inference is that everyone in that courtroom understood that what happened next was going to happen. I mean, the reason I'm asking is because from the judge's response to the defendant's question, you find coercion. No. What I find coercion in the, I find coercion in counsel's behavior. You said you found the judge's behavior coercive. Well, so the question is, the question is, in a situation in which someone is being, in a situation in which someone believes that they are going to be able to automatically withdraw their plea, which we all know is not the law. But in those situations, the cases tell us that when a judge gives the defendant the reasonable expectation that they'll be able to withdraw their plea, they should be able to withdraw their plea. And that was because he said you had a right to appeal? I think it's that. I think it's the posture that the judge took towards the entire representation. I don't, I, I would ask the audience not to focus on any particular precise verbiage. This is, we have to look at this, the totality of what happened here, the environment that was created, not just by counsel's behavior, but how the court dealt with that behavior. And I think that anyone in those circumstances, any reasonable person in those circumstances who was not well versed on the law would feel that it was reasonable to move forward in the way that Mr. Patton did. That, that's our, that's our position. It's not so much that the judge contributed to the coercion. The judge contributed not just by those, that statement, but also the way that he treated counsel beforehand, the way, the fact that he told Patton that he wasn't being represented properly, the fact that he told counsel in front of Patton that his word was worthless. Who in that situation would think that that judge is going to force you to continue on with that plea? I think that any reasonable person in that situation would think that this is a valid strategy to move forward. We know that it's not, but this is a situation in which the court is culpable in that misunderstanding. That's, that's our position. I don't usually like to use that word, but yes, yes. Are there any other questions? Apparently not. Thank you. Ms. Duffy. Your Honors, counsel, I don't really know how you avoid an ineffective assistance of counsel claim when you have facts like these and an argument like that. I think that the record, this is kind of a long response in our brief, but to try to shorten it up a little bit, we have explained how this guilty plea was voluntary in knowing. That's the first question. If you want to set aside a guilty plea, and we've shown how that happened. This defendant, this counsel who went through the guilty plea was his third private counsel. And during all of the time where this attorney was having some personal problems, and he did show up late and there were times he wasn't there when he was supposed to be, I think it's been dramatized in front of you today. I don't think it was quite as bad as counsel's making out. Not so good, is it? Not so good either. No. I mean, you know, that's really disrespectful behavior on behalf of an officer of the court. I agree. But does it have anything to do with this guilty plea? No. Well, let me just, so you can maybe get me thinking straight or otherwise. If I got these facts right, and on the day he comes in here, the attorney Jameson is saying, Judge, I've got to leave, I've got to leave. My family issues, I've got to leave. You know, my gosh, I've got to leave. And the judge, go ahead and leave. And then, and so under those circumstances, a guy facing a Class X felony is told, you've got two trials. You've got two choices. Go to trial right now with this lawyer that wants to leave or plead. Is that, have I got that close? Well, close. Close. I mean, it was set for a jury trial that day. Is there some other option besides those two? Was there some other option besides those two? I guess you could have waived jury that day if you wanted to and asked for a bench trial. Would it have taken place that day? I don't know. We'll go to trial. With this judge and with this lawyer who is insisting that he's got issues that he finds more important in Chicago, you go to trial or plead. Those are your options. Well, he showed up for a jury trial. That jury trial had been set for that day for quite some time. But, you know, I just want to know if my synopsis is a fair one or where I went wrong. The request for a continuance was denied. Counsel's request for a continuance was denied. Are we ready to bring? Okay. Okay. But I'm asking, is this defendant's lawyer sitting there saying, Judge, I won't leave. I've got to go. I've got family problems at home. I've got to go. I've got to go now. Judge, I've got to go. And the judge says, you know, I don't believe anything you say. You're not going anywhere. Is this an accurate representation of the circumstances under which this plea was entered? Counsel's request for a continuance was denied. I can tell you what happened later. When counsel testified at the hearing on the motion to withdraw the guilty plea, he was asked about this, on specifically what happened that day. And he said, yes, he had asked for the continuance. The continuance was denied. However, he was prepared to go to trial that day. He had spent a four-hour visit at the jail, a three-hour visit at the jail, and I will say this as something of an aside. The trial judge said after this hearing that, you know, I had one opinion of you going into this guilty plea, but after this hearing, I didn't realize you'd spent that much time with this defendant. I didn't realize you'd interviewed that many people. I didn't realize that the day of trial, you know, you were ready for trial, and they had a conference with the defendant and the defendant's family, who was paying the attorney's fees. For approximately an hour after the motion for continuance was denied, and the defendant, in front of his family and with counsel, decided he would take this guilty plea. So they start. The judge starts. I'm going to read you some rights about this guilty plea. At that point, the defendant asked the judge, can we still go to trial today? Let's go to trial. The judge responded, all right, we'll go to trial. Bob, let's bring the jury in. And after waffling back and forth a couple more times, the defendant was told, I'm going to start picking this jury. If you're not going to take a plea now, and then the defendant said, let's go ahead and go with the plea. Now, the fact that the defendant is waffling, you know, I can sort of understand that. But that doesn't mean that there's any coercion going on by the trial judge or by counsel. It's just the defendant's own inability to make up his mind what he wants to do. He's in a tough spot. But I also know that on the day of a jury trial, this often happens. There are some defendants, many defendants, who show up for trial on the day of a jury trial, and when they find out there's a jury panel here, they don't want to go through with it. Based upon the facts that are in the factual basis of this guilty plea, I can understand why you may not want to do that. This is a terrible case of aggravated battery of children. There's nothing in this record to show that the judge coerced the defendant into taking this guilty plea. He asked him several times, do you want another attorney? Do you want me to appoint a public defender? No, no, I want this attorney. So they take the guilty plea, and the defendant was admonished that, you know, after sentencing, he... So maybe, let me just say, so he did offer him that day, in addition to a trial or a plea, he offered him the opportunity to another attorney? I don't know if he did that day or not. Because, and I say that because he's set for a jury trial and he's denied a continuance, but he did on several occasions offer him another attorney. That wasn't the day that we're talking about. No, no, it wasn't. It wasn't that day. Before that day, you know, when the attorney would fail to show up, what do you want me to do? Do you want a public defender? I'll appoint a public defender. No, no, I want this attorney. I mean, that was on May 16th he asked, are you comfortable with Jameson? And Pat said he was satisfied with the representation. And on an earlier date, in May 2nd, earlier the trial judge said, you're not being properly represented. On May 16th he said, are you comfortable with this guy? And the motion practice continued for several weeks, and that was in June is the day in question. What was the focus of the defendant the day he pled? And there was no indication there was going to be, the continuance was denied and there was no indication he was going to be given some opportunity to have some other attorney. Not at that point. Trial. Not at that point. Trial or plea. We're set for trial today. And that's when the defendant came back and said, we'll take this plea offer that we have with a cap of 15 years. We'll take it. And the judge thoroughly admonished the defendant on this guilty plea. The defendant stated that there were no threats or promises were made to force him to plead guilty, so he wasn't coerced. He disagreed with some of the facts in the factual basis, but then the trial judge asked him, I'm going to ask you one more time, is it still your desire to plead guilty? Yeah. Yeah. The trial judge made the finding of a voluntary and knowing guilty plea. And the defendant signed a written guilty plea, somewhat lengthy, and he signed that he understood the explicit statement that a motion to withdraw his guilty plea must be filed and that the motion may or may not be granted. That's attached to the brief as an appendix. It's in the record, common law record at 215. He was admonished of his appeal rights, including necessity to file his motions. So while there is some problems with this attorney, do they amount to coercion? The record doesn't support that. Do they amount to ineffective assistance of counsel? Not based upon this record. This guilty plea was clearly voluntary, and the judge did all the admonishments he could. He did everything he possibly could to ensure that the defendant was pleading guilty because he wanted to. After the guilty plea, the defendant was appointed another attorney, public defendant. She did some work on the case, and they showed up in court. She asked for the transcript of the guilty plea. They did a motion to withdraw the guilty plea, and we show up in court with her, and all the defendant can do is throw expletives at her over and over again, just being vile. If you want to be dramatic about somebody going off on the record, take a look at what he had to say about her. So they go through a hearing on the motion to withdraw the plea. They took some testimony, and that's when the trial judge took a look at what this defense counsel really did as counsel for this defendant. He didn't look at his problems. He didn't look at the fact that he was undergoing a lot of stress. He took a brief. They evicted one. Yes, yes. I mean, that's in the record. Yes, yes, it is. For what purpose, I don't know, but counsel appended to his brief the ARDC proceedings. Probably not panned is what he said. Probably not. He is in a bind. But he had nevertheless been practicing law for 22 years. He testified to that. He'd been an assistant state's attorney at one time. The defendant testified at that hearing that he'd met with him at the jail. On the day of the guilty plea, defendant was ready for a jury trial. He testified to that. But his attorney was talking about the nine-year mark, and the defendant expected nine years because, I don't have no prior records or anything. This is the fourth time this defendant has pled guilty to a felony, fourth separate case. He's not a neophyte when it comes to the criminal justice system. The pre-sentence report proved that the defendant's statement under oath here was not true. He did have a prior record. He then admitted that a 15-year sentence was possible and that if he had not accepted the plea offer, a 30-year sentence was possible. That's true. He acknowledged that attorney Jamison told him they could proceed to the jury trial, but the defendant felt that Jamison was distracted by his own problems. That's the defendant's feeling, and he says that affected his decision to plead guilty. But when he was cross-examined, he recalled that the first attorney he had retained and then the second, he was not satisfied with either of those. The defendant retained Jamison. He did not recall how many visits to the jail there were. There were a total of four for a total of over 12 hours. The jail sheet confirmed these visitations by the attorney. The defendant acknowledged that he'd viewed DVDs of three witnesses' statements that attorney Jamison had brought to the jail for him to look over. They reviewed all the evidence. Attorney Jamison interviewed an expert witness, a Dr. Pearl, who's going to testify as to the abuse of these children. He talked to him for 45 minutes. He talked to the defendant's sister and mother numerous times, talked to the child victim's mother and other potential witnesses, filed a motion for bond reduction, response to request to submit other crimes evidence, and there were other pleadings filed, free trial. He stated that he felt that he was up to speed on the case and he was prepared for trial on the date of the jury trial. So he was prepared for trial and would have gone to jury trial if the defendant hadn't decided to take this guilty plea. He acknowledged his personal issues and he thought the defendant had vacillated that day prior, you know, to entering his guilty plea as to whether he should take it or not. And then again he spoke to his family. The trial judge at this hearing then, he noted that the problems with Attorney Jamison and the defendant, he knew that they had gone on for some period of time, but he found that the defendant had ample opportunity to change attorneys and he refused to do so. Because of the pre-trial difficulties and Jamison's failure to appear in court, the trial judge offered to appoint a public defender, but his plea was not accepted. That's a finding of fact by the trial judge. You know, in some, yes, there's some problems there, but the question is whether or not they rendered the guilty plea involuntary and whether or not there was any ineffective assistance of counsel. And I think by the time you read through the post-trial hearings, you'll come to the conclusion that the defendant's guilty plea was voluntary. Do you have any questions on any of the other issues? I don't. Okay. Thank you. Your Honors, first off, Justice Schmidt, I think that you're absolutely right in terms of your characterization of the facts of that day. That's certainly how I read the record, and I think that it goes to the heart of the coercion aspect of the argument, which is that who in that situation with your attorney begging to leave, the continuance denied, the option being plead or go to trial with this guy who is literally begging to leave, who would not think that pleading is a good idea in that situation? And after being told by the judge that you're not being represented properly, that this guy, his word isn't worth anything, et cetera, et cetera, who wouldn't think then that the plea would eventually be withdrawn? That's the basis of the argument that we're making. He was not offered a new attorney. I don't believe he was anyway. He was not offered a new attorney at that plea. On May 16th, the date that he sort of acquiesced to continuing with Mr. Jameson, that was the day that Jameson had come in with this comprehensive plan for avoiding this mess that eventually happened. So of course, in my mind at least, of course he continued on with Mr. Jameson. And remember that there's a caveat there. I am satisfied with his representation as long as he takes the case seriously and starts showing up. And it's true that he showed up after that, but he certainly didn't take the case seriously. I think that it's a serious distortion to suggest that Patton had any more than a minimal part in what happened with Jameson that day. Well, is it of any import that this wasn't your client's first rodeo? I don't think it is. I don't think it is. I don't have the record, his criminal record memorized, but I do not recall anything nearly as serious as this in that record. And frankly, I don't think that his character is particularly relevant to this situation. It's not so much his character as his experience with the legal system and pleading and getting the high-five and all that. Well, one thing that we don't know is whether or not he tried to withdraw those pleas, whether those hypothetical attempts were successful. The fact that he is in the system does not make him an expert in the system. And, I mean, this is an extraordinary situation, and I'm not sure a simple plea to some lesser offense in the past prepares one for the circus that he faced that day. Now, in terms of whether I have dramatized the facts, this is why I'm asking sort of explicitly for your Honest to spend a lot of time with the record, because it's a dramatic set of facts. And, again, this is my reading of the record, but I'm certainly not trying to color that reading in any way. This was a remarkable set of circumstances. See, the only other point that I wanted to make is to clarify, Justice Carter, when you asked if Mr. Jameson is being evicted, the point was that he was not being, or not the point, but one point was that he was not being evicted that day. We don't know. We know that he had a case. We don't know if that case was in the foreclosure portion of those proceedings, if it had gone all the way to eviction. We do know that he was not, in fact, being evicted that week. So it's, you know, for whatever that is worth. That's the information you found later. No, that is what the state said at that hearing. I'm trying to pick up a jury. I'm trying to go to trial, but we already talked about it, and he said it's an emergency. I don't know, you know. Immediately responded, Judge, I have to go home. I have to go after offering to try to provide documentation and confirm the situation. Right. I'm actually kind of concerned that I may have packed it away, but I know it's there. I have to go. You know, I don't know what to do regarding the state's inability to find information in terms of the timing he explained. It's not a question of whether it might happen. It's a question of when it would happen. He claimed that other than he was ready to go. You know, I've got to get home and get my family squared away. Well, two things. The state's response to that at that hearing was to explain that he was in the eviction process. He might have gotten notice that the eviction process had started, but that he had not been, according to Cook County, he had not been served and was not being eminently evicted. That was the state's position at that. They said they called the Cook County Sheriff's Department. Right. And they, I guess, became experts on the Cook County eviction process because they described it. And then Damison sarcastically thanked the state for bringing up the details of the situation but explained that since he was not a real estate attorney, he did not understand the eviction process. He claimed his family had to leave their home immediately. Again. I mean, that's where I was getting at. Right. He's, yes, he claims, the state claims that that's not true. So the trial court denied the motion and Damison immediately asked the trial court to reconsider because, quote, I've got to go home to my family. Right. Right. That is correct. But again, the state's representation is that that simply wasn't true. And then recall that later during the hearing, he testified that he was relieved to learn that he was not being evicted that day. Though I would point out that that counsel's testimony where he said that and he also said that he had been prepared to go to trial, that same testimony, he said that he had not been the flea council, that he had been fired before the flea, that Patton was facing charges that he apparently wasn't facing. It's I mean, I'm not I'm not sure if it's appropriate at this point to talk about the credibility of that testimony. But there are serious problems with the claim that he that he was ready to go that day. And and certainly I don't find it credible. The notion that he was suddenly relieved to learn that he was not being evicted when he responds to that, that that fact by continuing to ask to leave. So with that, I thank your honors. And we'd ask to I'm sorry to reverse the denial of the motion. Thank you. And thank you both for your argument today. We will take this matter under advisement. Get back to my written disposition. I'm going to short that. I'm going to now take short recess until lunch. Get back to my written disposition. Thank you.